Monique Olivier *(admitted pro hac vice)*
Cassidy A. Clark *(admitted pro hac vice)*
**OLIVIER & SCHREIBER LLP**
475 14th Street, Suite 250
Oakland, CA 94612
Telephone: (415) 484-0980
Facsimile: (415) 658-7758
monique@os-legal.com
cassidy@os-legal.com

*Attorneys for Plaintiff Susan McCartan*

Kristin K. Mayes, Attorney General
Michael K. Goodwin (SBN 014446)
N. Todd McKay (SBN 017369)
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Telephone: (602) 542-7674
Telephone: (602) 542-7653
Facsimile: (602) 542-7644
Michael.Goodwin@azag.gov
Todd.McKay@azag.gov

*Attorneys for Defendant Arizona Board of Regents*

*[Additional Counsel listed on Signature Page]*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Susan McCartan, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents,<br><br>Defendant. | Case No. 2:23-cv-02574-ROS<br><br>**JOINT CASE MANAGEMENT REPORT** |

The parties in the above-titled action—Plaintiff Susan McCartan and Defendant Arizona Board of Regents (collectively "the Parties")—hereby submit this Joint Case Management Report in advance of the July 10, 2024, Case Management Conference at 11 a.m. in Department 604 of the U.S. Federal Courthouse located at 401 W. Washington Street, Phoenix, Arizona 85003-2151.

The Parties jointly address the following information requested by the Court in its June 11, 2024 Order Setting Rule 16 Case Management Conference:

1.  **The parties who attended the Rule 26(f) meeting and assisted in developing the Case Management Report are:**

Monique Olivier and Cassidy Clark were in attendance for Plaintiff Dr. Susan McCartan; Michael K. Goodwin was in attendance for Defendant Arizona Board of Regents. All three assisted in developing the Case Management Report.

2.  **A list of the parties in the case, including any parent corporations or entities (for recusal purposes):**

Dr. Susan McCartan (Plaintiff); Arizona Board of Regents (Defendant). There are no parent corporations or entities for either Party.

3.  **A short statement of the nature of the case:**

**Plaintiff's Statement:** Plaintiff alleges that Defendant, the Arizona Board of Regents, violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) when it compensated Plaintiff, a woman, at a rate less than the rates paid to male employees for substantially equal work.

Plaintiff, Dr. Susan McCartan, was a highly experienced Career and Professional Advisor at the University of Arizona College of Medicine-Phoenix and a board-certified family medicine physician. Her Career and Professional Advisor position was strictly administrative; Plaintiff did not practice medicine or otherwise utilize her specialization in family medicine in her capacity as a Career and Professional Advisor,

nor did any of the other Career and Professional Advisors. All Career and Professional Advisors performed perform substantially equal work under the substantially similar conditions.

Originally, Defendant applied the same compensation structure to every Career and Professional Advisor regardless of medical specialty. As administrators rather than practicing physicians, their salaries were set according to job duties. Each was hired into their positions with a full time equivalent ("FTE") salary of approximately $208,000 regardless of medical specialty. As the most experienced Career and Professional Advisor, as of July 2022, Plaintiff had the highest salary of the four – two male and two female – Career and Professional Advisors in her department.

On August 8, 2022, the College of Medicine-Phoenix announced that it would be changing its compensation model for Career and Professional Advisors. Instead of basing salary on job duties, the College of Medicine-Phoenix announced that it would now base salaries for Career and Professional Advisors on their medical specialties, an ostensibly facially neutral policy. However, Plaintiff immediately understood that the new compensation model would have a disparate impact, resulting in unequal pay for male and female Career and Professional Advisors. Female physicians are overrepresented in specialties such as Pediatrics, Family Medicine, and Obstetrics and Gynecology, while they are underrepresented in specialties such as Radiology, Emergency Medicine, General Surgery, and Urology, among others. Plaintiff knew that given the medical specialties of the male and female Career and Professional Advisors, the proposed compensation model would result in lower salaries for women than men in her department, including herself. As such, she submitted complaints to multiple higher-ups about the disparate impact of the policy, but Defendant forged ahead with the policy anyway.

Once the policy was instituted, the FTE pay rates of the male Career and Professional Advisors skyrocketed, while the rates for their female counterparts did not.

Plaintiff's new FTE rate of pay was $243,363, based on her Family Medicine specialty. Her female coworkers fared worse; their new FTE rates of pay were $202,800 (based on her Pediatrics specialty) and $210,000 (for a new female hire with specialties in Internal Medicine, Pulmonary and Critical Care Medicine). Even though they performed the same work under the same conditions, Plaintiff's male coworkers' new FTE rates of pay were $293,700 (based on his Emergency Medicine specialty) and $413,600 (Radiology). These men are Plaintiff's direct comparators.

Defendant's decision to compensate its male Career and Professional Advisors more than its female Career and Professional Advisors, including Plaintiff, gives rise to both the disparate impact and disparate treatment claims under the Equal Pay Act and Title VII.

**Defendant's Statement:**

The University of Arizona College of Medicine-Phoenix (UACOM-P) has a policy of determining the salaries of its clinical faculty according to their medical specialties. The policy relies on salary data from the Association of American Medical Schools (AAMC) Faculty Salary Report, which provides compensation data for medical specialties by academic rank for faculty at medical schools around the country. Under the policy, UACOM-P set the base salary for clinical faculty members at the mean salary (50th percentile) listed in the AAMC Faculty Salary Report based on specialty and faculty rank, and then added 10% to that figure.

Plaintiff was a Clinical Professor in the Department of Family, Community, and Preventive Medicine at a .60 full-time equivalency (FTE). Her faculty appointment also included the title of Advisor, Professional Development, and provided an annualized salary of $243,363, in line with the AAMC data for her rank and Family Medicine specialty, adjusted to a pro rata amount of $146,000 consistent with her .60 FTE status. She complains that she was paid less than two male faculty members who served in Advisor roles. One of them, a Clinical Professor of Radiology, held a position in which the compensation policy

provided for an annualized salary of $413,600, though his actual salary was prorated to $165,440 to reflect his .40 FTE status. The other, a Clinical Associate Professor of Emergency Medicine, had a position with an annualized salary of $293,700, prorated to $176,220 consistent with his .60 FTE status.

Plaintiff incorrectly contends that the difference in pay violated Title VII and the Equal Pay Act. The difference in pay was not based on sex. As Plaintiff acknowledges, UACOM-P determined faculty salaries based on the faculty member's medical specialty, not gender. With its use of objective data from the AAMC Faculty Salary Report, UACOM-P's method of determining faculty salaries was standardized and transparent. Because the undisputed basis for any salary difference was nondiscriminatory, there was no violation of either Title VII or the Equal Pay Act.

**4. The jurisdictional basis for the case, describing the basis for jurisdiction and citing specific jurisdictional statutes:**

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings this action based on federal questions under the Equal Pay Act of 1963, 29 U.S.C. § 206(d)(1), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

**5. Any parties which have not been served and an explanation of why they have not been served, and any parties which have been served but have not answered or otherwise appeared:**

All parties have been served and have answered.

**6. A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings (the Court will set a deadline at the Case Management Conference for joining parties and amending pleadings):**

The Parties do not expect to add additional parties to the case or otherwise amend the pleadings.

**7.     A listing of contemplated motions and a statement of the issues to be decided by these motions (including motions under Federal Rules of Evidence 702, 703, 704, and 705):**

The Parties contemplate filing motions for summary judgment or partial summary judgment, depending on the outcome of discovery. Defendant may file other motions, including a *Daubert* motion.

**8.     Whether the case is suitable for reference to a United States Magistrate Judge for a settlement conference or trial:**

The Parties would not consent to reference for a Magistrate Judge for all purposes. Plaintiff is open to a settlement conference with a magistrate judge at the appropriate time.  Defendant believes that a settlement conference with a magistrate judge would not be productive at this time and will continue to evaluate this as the case progresses.

**9.     The status of related cases pending before other courts or other judges of this Court:**

There are no related cases pending before other courts or other judges of this Court.

**10.    A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information, including the parties' preservation of electronically stored information and the form or forms in which it will be produced (see Rules 16(b)(3), 26(f)(3)):**

Plaintiff is providing a proposed ESI protocol to Defendant. Defendant believes the proposed ESI protocol is unnecessary, unduly burdensome, and disproportional to the needs of the case.

**11.    A discussion of any issues relating to claims of privilege or work product (see Rules 16(b)(3), 26(f)(3)):**

The Parties are meeting and conferring on issues relating to claims of privilege or work product as they agree on an ESI protocol. Defendant believes the proposed ESI protocol is unnecessary, unduly burdensome, and disproportional to the needs of the case.

**12.  A discussion of whether an order under Federal Rule of Evidence 502(d) is warranted in this case:**

Defendant is providing a proposed Protective Order and clawback provision to Plaintiff.

**13.  A discussion of necessary discovery. This discussion should take into account the December 1, 2015 amendments to Rule 26(b)(1), and should include**

    a. **The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case:** Plaintiff is requesting written discovery, expert discovery, witness depositions, and document production, including ESI. Defendant plans to disclose relevant information and anticipates participation in written discovery, deposition discovery, and expert discovery.

    b. **Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure:** The Parties do not suggest any changes.

    c. **The number of hours permitted for each deposition. The parties should consider whether a total number of depositions hours should be set in the case, such as 30 total hours for Plaintiffs and 30 total hours for Defendants. Such overall time limits have the advantage of providing an incentive for each side to be as efficient as possible in each deposition, while also allowing parties to allocate time among witnesses depending on the importance and complexity of subjects to be covered with the witnesses:** Plaintiff does not believe a time limit for depositions should be set, but commits to conducting depositions efficiently. Defendant does not believe

that time limits on depositions are needed at this time.

**14. Proposed specific dates for each of the following:**

    **a. Dates for full and complete expert disclosures under Federal Rule of Civil Procedure 26(a)(2)(A)-(C):** Plaintiff proposes that both Plaintiff and Defendant complete expert disclosures by December 2, 2024, with a later opportunity for rebuttals. Defendant proposes that Plaintiff shall make her Rule 26(a)(2) disclosure of experts, if any, on or before September 20, 2024; and that Defendant shall make its Rule 26(a)(2) disclosure of experts, if any, on or before November 8, 2024.

    **b. A deadline for completion of all expert depositions:** February 14, 2025.

    **c. A date by which the parties shall have engaged in face-to-face good faith settlement talks:** January 24, 2025.

    **d. A deadline for filing dispositive motions:** April 25, 2025.

**15. Whether a jury trial has been requested and whether the request for a jury trial is contested (if the request is contested, briefly set forth the reasons):**

Plaintiff has requested a jury trial. Defendant does not contest.

**16. The prospects for settlement, including any request of the Court for assistance in settlement efforts:**

The Parties will continue to discuss settlement in good faith.

**17. Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure:**

The Parties have nothing further at this time.

| | | |
|---|---|---|
| 1 | Dated: July 3, 2024 | MILLER SHAH LLP |
| 2 | | OLIVIER & SCHREIBER LLP |
| 3 | | */s/ Monique Olivier* |
| 4 | | Monique Olivier (*admitted pro hac vice*) |
| | | 475 14th Street, Suite 250 |
| 5 | | Oakland, CA 94612 |
| | | Telephone: (415) 484-0980 |
| 6 | | Facsimile: (415) 658-7758 |
| 7 | | monique@os-legal.com |
| 8 | | Nathan C. Zipperian (SBN 020083) |
| | | **MILLER SHAH LLP** |
| 9 | | 1625 N. Commerce Parkway, Suite 320 |
| 10 | | Ft. Lauderdale, FL 33326 |
| | | Telephone: (866) 540-5505 |
| 11 | | Facsimile: (866) 300-7367 |
| 12 | | nczipperian@millershah.com |
| 13 | | *Attorneys for Plaintiff* |
| 14 | Dated: July 3, 2024 | KRISTEN K. MAYES, ATTORNEY GENERAL |
| 15 | | */s/ Michael K. Goodwin* |
| | | Michael K. Goodwin |
| 16 | | Assistant Attorney General |
| 17 | | 2005 North Central Avenue |
| | | Phoenix, AZ 85004 |
| 18 | | Telephone: (602) 542-7674 |
| 19 | | Michael.Goodwin@azag.gov |
| 20 | | *Attorneys for Defendant* |

8

I hereby certify that, this 3rd day of July, 2024, I electronically transmitted this document to the clerk's office using the CM/ECF system for filing and transmittal of a notice of electronic filing to the following CM/ECF registrants:

Kristin K. Mayes
Attorney General
N. Todd McKay
Michael K. Goodwin
Assistant Attorney General
2005 N. Central Avenue
Phoenix, Arizona 85004-1592
Michael.Goodwin@azag.gov
Todd.McKay@azag.gov
Attorneys for Defendant Arizona Board of Regents

Chris Pastore
Associate General Counsel
THE UNIVERSITY OF ARIZONA
Administration Building, Room 103
1401 E. University Blvd. |
Tucson, AZ 85721
email@arizona.edu
Attorneys for Defendant

Cassidy Clark
Olivier & Schreiber LLP
475 14th St., Ste. 250 Oakland, CA 94612
cassidy@os-legal.com
Attorneys for Plaintiff

Nathan Curtis Zipperian
Miller Shah LLP
1625 N Commerce Pkwy., Ste. 320
Ft Lauderdale, FL 33326
nczipperian@millershah.com
Attorney for Plaintiff

/s/ Ayanna Bediako

9

JOINT CASE MANAGEMENT REPORT                          Case No. 2:23-cv-02574-ROS